[Crim. No. 2610. First Dist., Div. Two. Nov. 9, 1949.]

THE PEOPLE, Respondent, v. RALPH G. ACUFF, Appellant.

Ralph G. Acuff, in pro. per., for Appellant.

Fred N. Howser, Attorney General, David K. Lener, Deputy Attorney General, Francis W. Collins, District Attorney, and Matthew S. Walker, Deputy District Attorney, for Respondent.

GOODELL, J.—By an information in four counts appellant was accused of forging two checks (Pen. Code, § 470) and uttering them (§ 476, *id.*). The information also alleged a prior conviction of issuing a fraudulent check in Wyoming, which was admitted. The jury returned a verdict of guilty on each count and appellant was sentenced to the state penitentiary, the sentences on the second, third and fourth counts to run concurrently with that of the first. A new trial was denied and this appeal was taken from that order as well as from the judgment of conviction.

The first count charged the forgery of a check for $82.20 on or about September 25, 1948, with intent to cheat and defraud one Ralph Bellis and the American Trust Company, Livermore office.

The second count charged the uttering of the same fictitious check.

The third count charged the forgery of a check for $82.20 on or about October 5, 1948, with intent to cheat and defraud

one William Donel Wood and the American Trust Company, Livermore office.

The fourth count charged the uttering of the last-named fictitious check.

The check covered by the first and second counts is numbered 1014, dated 9-25-1948, drawn on Livermore office American Trust Company, payable to Jack L. Kiessig, for $82.20, signed with a signature difficult to decipher but which looks like "K. H. Geiger" or some similar name. It is endorsed in green ink "Jack L. Kiessig 637 E. 1st. Livermore, Calif."

The check covered by the third and fourth counts is numbered 1015, dated 9-25-1948, drawn on the same bank, payable to the same payee, for $82.20, signed with the same kind of signature, looking, however, more like "K. H. Reigh" or "K. H. Reiger" than "K. H Geiger." It is endorsed in pencil "Jack L. Kiessig 637 E. Livermore, Calif. Dr. 62669." (The latter figures apparently are those of a driver's license.)

The two checks are substantially identical on their faces except for their different numbers and except for the pencil writing "O. K. Wood" on the upper left-hand corner of 1015, and the differences in the handwriting of the signatures. Each is drawn on a printed form of check of "Livermore Office American Trust Company." Each has protectograph punches through the payee's name. On each "The sum . . . 82 Dols 20 cts" is stamped by a check-writing machine. On each in red rubber stamp appears the printing "A. A. A. Roofing Co." above the penned signature, and near the lower left-hand corner "223 E. Railroad Ave. Livermore, Calif.," and across the left-hand edge "A. A. A. Roofing Co. J. M. Applicator." On the face of each in purple rubber stamp appears "Cannot locate account at Livermore Branch."

A witness employed at the time by Ralph Bellis testified that appellant came into the Ralph Bellis store in Pittsburg, California, purchased merchandise coming to about $22 and tendered check 1014 in payment. It was submitted to Bellis who authorized its acceptance, and the difference between the sale price and $82.20 was given to appellant. The witness testified that appellant endorsed the check in his presence.

At Montgomery Ward & Company's store in Pittsburg, a man identified as appellant sought to cash check 1015. It was submitted to the manager, William Donel Wood. Appellant when asked for some identification produced a temporary driver's license in the name of Jack L. Kiessig. This was deemed sufficient, Wood O. K'd the check in pencil, and

appellant received the $82.20 without making any purchase. An employee testified that appellant endorsed it in her presence.

The manager of the Livermore bank testified that he had never heard of any A. A. A. Roofing Company, and knew nothing of a K. H. Reigh or K. H. Leigh in or about Livermore. He also testified that about a dozen checks similar to these two were presented to his bank but were refused payment because they had no such account. Appellant concedes in his brief that A. A. A. Roofing Company is a fictitious firm.

The following is quoted from the statement of facts in appellant's brief: "On October 24th, 1948, a printing press was found in Amador County . . . and delivered to the Sheriff . . . to be returned to the owner. With the printing press was found: a book of blank checks, a set of three rubber stamps, the same as those used to make the checks above mentioned, and twelve or thirteen uncashed checks, that were, except for the numbers, the same as those cashed in Pittsburg. I, the appellant, reported the loss of the printing press to Sheriff Lucot, and was arrested and held for investigation."

Inspector Clawson of the Pittsburg Police Department went to Jackson with Ralph Bellis who identified appellant then in jail there as the man who had passed check 1014. With the articles already named there were also a "Paymaster" checkwriter and protector, a typewriter, two fonts of type and other paraphernalia. A photograph of these articles spread out on a table after having been brought to Pittsburg, with appellant standing beside the table looking at them, is in evidence. Appellant admitted at Jackson that the paraphernalia was his, and in his opening statement to the jury he said: "You have heard him (the District Attorney) outline in detail the pieces of paraphernalia found, how it was acquired, and who it belonged to. That is an admitted fact . . ." Instead of 12 or 13 uncashed checks there were 19 in all, one batch of six and another of 13, numbered from 1018 to 1038, minus 1021 and 1032 missing, all dated 9-25-1948, each for $82.20; all of them were the same as to bank, payee, and rubber stamping; all protectographed and stamped by a checkwriting machine and all signed with the same kind of signature, the initials "K. H." being distinct and the surnames appearing to be either "Reigh" or "Leigh." All 19, in short, were the same in general appearance and content as the two involved herein, except for numbering and the differences in the handwriting of the signatures.

Appellant had had business dealings with Gorman Motor Company of Jackson and had written two letters to C. Gorman. Both letters, in the handwriting of appellant, were submitted by the prosecution to Dr. E. O. Heinrich for examination and analysis in connection with the checks in question. There was also submitted to him as an exemplar a list of six names written by appellant in ink, for the purpose of subpoena for trial. Dr. Heinrich in testifying gave a comprehensive exposition of the writing habits and idiosyncrasies common to the two Gorman letters and the list of names used as exemplars and the checks, and expressed the opinion that the signatures on the checks showed the writer thereof had not attempted to imitate the signature of any person but had attempted to dissimilate the writer's own handwriting. His opinion was that the person who wrote the two Gorman letters wrote the two checks in question. He was cross-examined by appellant exhaustively and without restriction.

The testimony of Bellis and Wood and of the employees of the Ralph Bellis Store and Montgomery Ward & Company, who identified appellant as the man who presented and endorsed the checks in their presence, plus the expert testimony of Dr. Heinrich, plus appellant's admitted ownership of the paraphernalia, made out a strong and convincing case against him. Indeed, in arguing to the jury he conceded that the evidence was "heavy for conviction" and said: "It is so heavy, in fact, that if a man had the slightest doubt of his own innocence he would never have taken a chance of coming in front of you people, before this Judge and this Court and say, 'I am not guilty,' unless he knew in his own heart that he was not."

Appellant did not take the stand, but in arguing his case to the jury repeatedly asserted that he "didn't do it."

Numerous points are made by appellant, but we find no merit in any of them.

The jury after deliberating asked for a reading of the testimony of the witnesses Wood and Wallin, and that was done. The jury also wanted "to hear Mr. Acuff's statement regarding Mr. Wood's testimony" to which the court responded that "Mr. Acuff did not take the stand and was not sworn to give testimony in the case, and anything that he might say if not under oath, I am afraid might be in the nature of a self-serving declaration. Do counsel and defendant agree with me on that? Mr. Walker: Yes, Your Honor. Mr. Acuff: Yes, Your Honor." The jury also asked whether it was "possible

to find the defendant guilty on one count and not on the other three counts'' to which the court responded that ''You can find him guilty or not guilty on any one of the counts, one or more . . .''

Appellant states that ''it is a known fact that all juries start their deliberations from the first count . . . and continue until all counts are resolved.'' From that assumption he argues that the jury's request shows ''that they were in agreement as to the innocence of the appellant in so far as the first three counts were concerned, but that a question remained to be resolved in regards to count four . . . since counts three . . . and four . . . are the only ones that Mr. Wood's and Mrs. Wallin's testimony had any bearing upon.'' There is no rule or practice respecting the order in which a jury proceeds with its deliberations, hence what appellant says on that subject is pure conjecture. The jury's inquiry whether it could find defendant guilty on but one of four counts does not prove anything. The fact remains that after the court's instruction, which was not unfavorable to appellant, he was found guilty on all four counts.

In his brief appellant quotes a letter which he received after the trial from the foreman of the jury. This letter of course is no part of the record and cannot be considered. Nor is there now any way of making it part of the record, since it was not before the court on the motion for new trial.

Appellant claims the district attorney was guilty of misconduct in not calling the Sheriff of Amador County, and that the judge should have compelled him to do so. His argument that as the sheriff was the arresting officer he was ''a logical state witness'' is without any foundation since the arrest in Amador might have been made for some offense (not shown by the record) wholly unrelated to the offenses on trial. The Amador sheriff's testimony certainly was not needed to prove forgeries committed in Contra Costa County, nor to prove appellant's ownership of the paraphernalia since that had been freely admitted in both counties. The place (whether in a cave or elsewhere) where it was found or the circumstances attending its discovery were not relevant or material. The district attorney was under no duty to call the sheriff, and the judge could not, with propriety, have compelled him to do so. In the same connection appellant speaks of constitutional guaranties, but no principle of confrontation— which appellant is apparently driving at—was involved or vio-

lated. Appellant was confronted by the witnesses against him, namely, the persons who were eyewitnesses in Contra Costa, not Amador County, to his endorsement and cashing of the two checks. The sheriff, had he been called to the stand, could have added nothing by way of confrontation. Had the appellant required his testimony he could have had it, for he was given the opportunity to subpoena witnesses, and gave the jailer a list of six persons which did not include the sheriff. At the close of the People's case when appellant found they had not called the sheriff he could still have called him. The record shows that when the taking of testimony was about to open appellant stated that he would not need any witnesses other than Chester Oeth and the court on appellant's request excused the others. There was no basis for appellant's assumption that the prosecution would call Sheriff Lucot and appellant never indicated to the trial court what he would have testified to and does not now give any such indication.

█ In his arguments the district attorney said: "I am completely satisfied in my own mind, after carefully reviewing all this evidence for several months, that Ralph G. Acuff is guilty on every single one of these counts" and "Now, even if you don't believe he wrote them, and I do and I think you do . . ." and "I don't see how there could be any reasonable doubt." Appellant contends that these statements were misconduct.

The district attorney's statement that he was completely satisfied that appellant was guilty on every count was made following a lengthy summary and analysis of the evidence, (see *People* v. *Pratchner,* 9 Cal.App.2d 451, 454 [50 P.2d 75])—wherein he pointed out, among other things, that the People's witnesses were uncontradicted—and it must be assumed that when he said *he* was satisfied of appellant's guilt he meant *because the evidence showed it.* Later on he expressed himself with emphasis not on *his* belief but on *what the evidence showed,* as follows: "I am not asking you to find Ralph Acuff guilty on four counts as charged because I believe he is; I am asking you to find him guilty on all four counts because the evidence shows beyond a reasonable doubt that he is guilty as charged . . ." It is in this latter sense that his earlier remarks must have been understood. A prosecutor "has the right to state his views, his beliefs and his convictions as to what the evidence establishes, and to urge that the evidence convinces his mind or is conclusive of the

guilt of the defendant.'' (8 Cal.Jur. 268; *People* v. *Romero,* 143 Cal. 458, 460 [77 P. 163]; *People* v. *Weber,* 149 Cal. 325, 340, 341 [86 P. 671]; *People* v. *Rogers,* 163 Cal. 476, 482 [126 P. 143]; *People* v. *Kelly,* 69 Cal.App. 558, 563 [231 P. 767].) The same is to be said respecting his statement ''and I don't see how there could be any reasonable doubt.'' When the district attorney said ''Now, even if you don't believe he wrote them'' it was a part of his argument that even if appellant did not actually *write* the checks it would still be forgery if he passed them ''knowing the same to be false, . . . forged, or counterfeited, with intent to . . . defraud any person''; (Pen. Code, § 470). We find no misconduct in any of these remarks.

Appellant next attacks the manner in which the paraphernalia was laid before the court. When it was offered for identification appellant volunteered the statement that the photograph (already referred to) ''appears to include all the material.'' There was no doubt as to the admissibility of the check-writing machine, the three rubber stamps, and the stamp pad. The jury were entitled, for instance, to examine the three rubber stamps and compare them, and the prints they made, with the rubber stamping on the checks. There was no question of trickery or fraud in the introduction of these physical objects and it is obvious that they had strong and convincing probative force.

Appellant contends that the district attorney on three occasions wilfully misrepresented the facts. First, in his opening statement when he said: ''All of this was found in a little cave in Amador County, near Jackson.'' There was no evidence as to where the paraphernalia was found. In appellant's brief it is stated that it was found in Amador County. Whether found in a cave or elsewhere is not material. The only statement which is outside the record is with respect to the cave—a wholly immaterial incident. The second assignment of misrepresentation is a statement in the closing argument that ''Finger prints are circumstantial evidence,'' which of course is true. Moreover, this obviously was in response to the argument of appellant to the jury in which he criticized the prosecution for not immediately submitting the checks to a fingerprint test. The point is without merit. The third assignment was the statement that ''we have no knowledge of when these checks were passed.'' That, also, is true since none of the persons connected with the two stores was able to fix

the time any closer than late September or early October and they did not attempt to guess at it. The information charged, as usual, "on or about," and the court correctly ruled that this sufficed both as to allegation and proof.

The district attorney said to the jury "This man was identified . . . out of a whole jail full of people and by photographs . . ." while the evidence shows that when Bellis first identified appellant in Jackson there was but one other man in the cell. Moreover appellant was not identified by photographs. The statement, while loose and inaccurate, was not important and certainly not prejudicial since he was positively identified in person by several witnesses.

Misconduct is charged against the judge because he said "We can probably have it submitted by tomorrow afternoon around three o'clock." This, appellant argues, kept the appellant from asking that time be allowed to have the sheriff ordered from Jackson, a matter already discussed.

Misconduct is charged because the judge relied on his memory instead of referring to the transcript when the jury asked if they could find appellant guilty on one count only, a matter already dealt with. The judge did not need to refer to the transcript in order to tell the jury, as he did, that it could find appellant guilty, or not guilty, on one or more counts.

Under the heading of "New evidence" appellant complains that because of his confinement he could not properly investigate the case. He quotes from a newspaper article in the "Stockton Record" and one in the "Sacramento Bee" dealing with the discovery of the paraphernalia in a cave by an unidentified tourist. Appellant argues that had he been at liberty he could have learned of these newspaper articles in time to ask the questions "Who found the equipment?" and "What did he look like?" questions which, for reasons already given, would have been irrelevant to the issues whether two forgeries had been committed and two fictitious checks uttered.

Appellant's statement that "The constant fighting and bickering that was necessary for the defense to secure even the slightest bit of consideration, placed the appellant in a position of great 'surprise' which ordinary prudence could not have guarded against" is utterly without justification or support in the record. From the outset the judge advised appellant as to the conduct of his defense. He informed him of his right of challenge in the selection of the jury. He instructed him how to properly frame questions. At one point

he said "Come, fight up, Mr. Acuff." Throughout he showed the utmost consideration, and the record indicates that he was ever mindful that the defendant, a layman, was conducting his own defense. In the presence of the jury he expressed his appreciation of the way appellant had handled himself in court. The record instead of showing "constant fighting and bickering" shows merely that the appellant was doing the best he could to make what was clearly an uphill fight, uphill not because of courtroom opposition but because of what he admitted to the jury was "heavy" evidence against him. The record shows that there was no conduct of the district attorney which went unreasonably or unfairly beyond the ordinary attempt of a prosecuting officer to lay the facts before the jury. It is true that at least once the judge of his own motion—and doubtless because appellant was acting as his own attorney—stopped the district attorney when, had the defendant been represented by counsel, he probably would have awaited an objection, but the district attorney at once conformed and no prejudice resulted. Appellant had a fair trial of a case in which the evidence was "heavy for conviction" to say the very least.

In discussing appellant's numerous contentions we have avoided reference to the absence from the record of objections or assignments of error and misconduct, treating the several matters, for the purpose of the discussion, as though such objections and assignments had been interposed.

The judgment and order appealed from are affirmed.

Nourse, P. J., and Dooling, J., concurred.