[Crim. No. 2398. Third Dist. Oct. 28, 1953.]

THE PEOPLE, Respondent, v. THOMAS W. ROSS, Appellant.

Melvin L. Pierovich for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—The appellant was convicted of burglary in the second degree and after denial of his motion for a new trial, was sentenced to imprisonment in San Quentin, where he is now incarcerated. He appeals from the judgment entered upon the jury's verdict and from the order denying a new trial on the grounds that the wholly circumstantial evidence is insufficient to sustain the verdict and that prejudicial error resulted from alleged misconduct of the district attorney and from the trial court's abuse of discretion in denying his motion for a new trial.

The commission of the burglary is undisputed. Between the hours of 4:30 p. m. on Wednesday, April 16, 1952, and 6:30 a. m. on Thursday, April 17, 1952, the Amador County High School was broken into and $42 stolen from a safe in the main building, to which entrance had been gained by prying open a window with some heavy instrument. The only clues found were hammer marks on the safe and a steel claw, apparently broken off from a hammer or crowbar used to "jimmy" the window. The evidence supports the following recital of facts:

Late on the following Saturday night, April 19, 1952, a deputy sheriff of Sacramento County observed appellant and three companions drive up behind the rear of buildings in the Town and Country Village on the outskirts of the city of Sacramento. He inquired as to what they were doing and was informed they had turned off the road by mistake. Upon request, appellant willingly opened the trunk of his car in which were found a number of tools which appellant said were his and used in his employment as a roofer. Among these was a hammer, which was proven to have made the marks found on the rifled school safe, and a crowbar with a prong broken off. The steel claw found at the scene of the crime fitted the break perfectly. Appellant and his companions voluntarily submitted to arrest and were confined in the county jail, where, on the following Monday morning, April 21, 1952, appellant, without being advised as to why he was apprehended or of what he was suspected, was interrogated. He again admitted ownership of all the tools found

in his car and maintained that he had never loaned them to anyone and that his car was never driven by anyone other than himself and his wife except on one occasion when it was borrowed for about one-half hour by Everett Gibson who was one of appellant's companions at the time of his arrest. Appellant alone was charged with burglarizing the Amador County High School. At his trial he repudiated his former statements and corroborated the testimony of the aforementioned Gibson that he borrowed appellant's tools on Tuesday, April 15, 1952, and replaced them in his car on Saturday, April 19, 1952, while appellant was in a barbershop just shortly before they left Monterey for Sacramento where they were apprehended that evening. Appellant claimed that he made his prior contradictory statements when he was not charged with any crime and under the belief that it would expedite his early release from custody.

Appellant sought to prove alibi. He introduced evidence that he was a resident of Monterey County and was there employed by his brother for whom another brother also was a roofer. The Amador County High School is approximately 194 miles distant from appellant's place of abode and employment. Data on records kept in the usual course of business supported the testimony of appellant's two brothers and his foreman, who was not a relative, that appellant worked in Monterey ten hours each day on April 16. and 17, 1952, and nine hours on April 18th. Appellant's wife testified that he returned from work on April 16, 1952, at about 6 p. m. and remained home until the following morning when he left for work at about 6 o'clock. One of appellant's brothers testified that between 7 and 8 o'clock on the night of April 16, 1952, he was with appellant at his house listening to a radio broadcast of a prizefight. Appellant's paycheck for the week of April 14th-18th, which was endorsed in his name and cashed in Monterey on or before April 19th, was introduced in evidence. The brother for whom appellant worked testified that the amount thereof, $89.90, was for 39 hours straight time at $2.75 an hour and six hours at time and one-half, less $17.10 for tax deductions and $25 for an advance previously made to appellant.

Appellant contends that, as a matter of law, in view of the foregoing evidence that he was in Monterey County between 4:30 p. m. on April 16, 1952, and 6:30 a. m. on April 17, 1952, the jury could not find *"beyond a reasonable doubt"* that he was in Amador County between those hours, and,

therefore, they were compelled to find that his alibi was established and that the circumstantial evidence was insufficient to warrant his conviction. █ But, as stated in *People* v. *Huizenga*, 34 Cal.2d 669, 675-676 [213 P.2d 710]:

"... This contention confuses the function of court and jury by implying that if the court itself can formulate a reasonable theory of innocence from the evidence it must reverse a judgment of conviction. It is not for the court, however, to determine whether it can formulate such a theory. It must assume in favor of the verdict the existence of every fact that the jury could reasonably deduce from the evidence and then determine whether or not a reasonable jury could find the defendant guilty beyond a reasonable doubt. . . .

█ Thus, 'the rule that the circumstances relied upon by the prosecution must be consistent with guilt and inconsistent with an hypothesis of innocence is a rule of instruction for the jury, and is not the rule for the guidance of the court on review. (*People* v. *Newland, supra* [15 Cal.2d 678 (104 P.2d 778)] at page 682.)

█ "'The functions of the jury include the determination of the credibility of witnesses, the weighing of the evidence, and the drawing of justifiable inferences of fact from proven facts. █ It is the function of the judge to deny the jury any opportunity to operate beyond its province. The jury may not be permitted to conjecture merely or to conclude upon pure speculation or from passion, prejudice or sympathy. The critical point in this boundary is the existence or non-existence of a reasonable doubt as to guilt. █ If the evidence is such that reasonable jurymen must necessarily have such a doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration. █ But if a reasonable mind might fairly have a reasonable doubt or might fairly not have one, the case is for the jury, and the decision is for the jurors to make. The law recognizes that the scope of a reasonable mind is broad. Its conclusion is not always a point certain, but, upon given evidence, may be one of a number of conclusions. Both innocence and guilt beyond a reasonable doubt may lie fairly within the limits of reasonable conclusion from given facts. █ The judge's function is exhausted, when he determines that the evidence does or does not permit the conclusion of guilt beyond reasonable doubt within the fair operation of a reasonable mind.' (*Curley* v. *United States,* 160 F.2d 229, 232.)"

Respondent maintains that under the foregoing rule the jury could reasonably have found appellant guilty beyond a reasonable doubt since the crowbar and a hammer found in appellant's possession at the time of his arrest are admitted to be tools used in the burglarizing of the Amador County High School. It is pointed out that the jury were entitled to disbelieve the testimony of the ex-convict Gibson as probably untrustworthy, to give no credence to appellant's testimony due to his contradictory statements, to discredit appellant's other witnesses due to their interest in exonerating him, and to find that the $25 deducted from appellant's paycheck for the week of April 14th-18th was not for a previous advance as claimed, but for time he was absent from his work, presumably on April 16th and 17th. Respondent further argues that even if the jury believed appellant worked in Monterey on the days involved, they could have found that he made a round trip from Monterey to Amador County between 8 p. m. on April 16th and 6 o'clock the following morning as this would have required but eight hours' driving time. These contentions must be sustained. The issue of guilt or innocence here was a factual one which the jury, acting within its proper sphere, has finally decided. (See *People* v. *Parkinson,* 138 Cal.App. 599 [33 P.2d 18], for case strikingly similar on its facts which were held sufficient to support conviction. See, also, *People* v. *Taylor,* 4 Cal.2d 495 [50 P.2d 796].)

The judgment and order denying a motion for a new trial must be affirmed unless, as appellant contends, the district attorney was guilty of prejudicial misconduct or the trial court abused its discretion in denying the motion for a new trial. We hold that neither of said grounds for reversal of the judgment or order exists.

Appellant complains of many statements made by the district attorney in his argument to the jury wherein he referred to appellant's lack of respect for his family, his "ex-con" friends, and his gambling debts. However, as pointed out by the respondent, the appellant voluntarily stated that he was a poker player and this was the cause of trouble between him and his wife. In *People* v. *Tuthill,* 31 Cal.2d 92, 98 [187 P.2d 16], the prosecuting attorney in his argument to the jury remarked as to the " 'irresponsibility of this defendant, his plain worthlessness.' " The court held this did not constitute misconduct, as it "was said in connection with comments upon the business venture of ·defendant

and the deceased. In view of defendant's own testimony as to his drinking habits and other activities, the statement cannot be said to be without justification."

 Likewise, the district attorney was entitled to express the opinion that he was sure that the appellant was at the Amador County High School on the night of the burglary as it must be assumed that he meant he was sure of this fact because the evidence showed it. (*People* v. *Acuff*, 94 Cal. App.2d 551, 558 [211 P.2d 17].)

 There was no appeal to passion in the district attorney's query as to whether or not the jury wanted appellant to come back and do the job over again or if they would fit the jigsaw puzzle together and put him where he belonged. On appeal from a judgment entered on a conviction of possession of narcotics in *People* v. *Head*, 108 Cal.App.2d 734, 737-738 [239 P.2d 506], it was contended that the remarks of the district attorney were inflammatory and highly prejudicial. He had argued that it was necessary for the jury to put up a stop light for all teenagers and if the jury did not return a proper verdict, they were giving a green light. The court held this could only be construed as meaning that the prosecution was convinced from the evidence that the defendants were guilty and that if they were, an acquittal would encourage them and others to continue trafficking in narcotics.

Likewise, in *People* v. *Parkinson, supra,* page 606, where a key found on defendant's person fitted the lock on the door of the burglarized premises, it was held there was no misconduct in the district attorney's arguing:

" ' . . . And how would the key get into Parkinson's possession? And that is the thing, the key to the whole situation in this case: The key was just a little too much. That is one of the things that you can't explain, and they could argue until Doomsday, and how could they explain it? And I want you to pay particular attention to that, because it is not only the door key, but it is the key to this whole case, the thing that ties up the defendant Parkinson, in the case so completely that there is absolutely and positively no doubt; . . . that door was closed there and Parkinson had the key that turned the lock on the door, that not only locked it but unlocked it, . . . [I]f Parkinson didn't use the key to open the door that led in there, how did the key get back into Parkinson's pocket?' "

 Appellant admits that in most instances he failed to object or take exception to the alleged misconduct of which

he now complains and that ordinarily such failure would constitute a waiver of such objections. (*People* v. *Simon,* 107 Cal.App.2d 105 [236 P.2d 855].) However, he contends that the misconduct was of such character that its harmful effect could not be removed by striking the objectionable remarks or admonishing the jury to disregard them and, therefore, the exception to the general rule as enumerated in *People* v. *Ford,* 89 Cal.App.2d 467, 470-471 [200 P.2d 867], *People* v. *Kirkes,* 39 Cal.2d 719, 726 [249 P.2d 1], *People* v. *Braun,* 14 Cal.2d 1, 7-8 [92 P.2d 402], *People* v. *Podwys,* 6 Cal.App.2d 71 [44 P.2d 377], is applicable.

We do not find that the district attorney pursued a continuous and flagrant course of ·misconduct which was so prejudicial that it resulted in a miscarriage of justice. In fact, in most instances objections would have been overruled as the district attorney's statements were within the realm of legitimate argument based on the evidence in the case.

Neither the judgment nor the order denying the motion for a new trial can be reversed on the ground of insufficiency of the evidence or prejudicial misconduct of the prosecution, but the appellant urges that there was a clear abuse of discretion by the trial court in denying his motion for a new trial because of newly discovered evidence. In support of said motion appellant presented an affidavit of the chief of police of Placerville wherein it was set forth that on the night of April 16th or the morning of April 17th the Placerville Grammar School was burglarized and that the *modus operandi* was the same as that of the burglarization of the Amador County High School. There was also presented the affidavit of Everett Gibson wherein he admitted both burglaries and stated appellant was not with him. It is appellant's contention that this establishes his innocence as it would have been physically impossible for him to have traveled 444 miles and participated in both burglaries between 5:30 p. m. on April 16th and 6:30 a. m. on April 17th. What we have said above as to the sufficiency of the evidence produced at the trial applies with equal force to the new matter presented on the motion for the new trial. The trial judge was fully justified in concluding that no credence should be accorded the affidavit of Gibson whose demeanor he had the opportunity to observe at the trial. ■ The rule is well established that:

". . . 'A motion for new trial is addressed to the sound legal discretion of the trial court, and its action will not be

disturbed upon appeal except in an instance manifesting a clear and unmistakable abuse of such discretion. This rule is peculiarly applicable to an application based upon the ground of newly discovered evidence, as to which an enlarged discretion is committed to the trial court, because of the disfavor with which such applications have always been regarded. This discretion is to be exercised in determining the diligence shown, the truth of the matters stated, and the materiality and probability of the effect of them if believed to be true. The question as to whether the evidence produced on the motion is such as to render a different result probable is one peculiarly addressed to the discretion of the trial judge.' '' (*People* v. *Parkinson, supra,* p. 612.)

The judgment and the order denying the motion for a new trial are affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied November 10, 1953.