[Crim. No. 2774. Third Dist. Oct. 17, 1957.]

THE PEOPLE, Respondent, v. DON McDANIEL, Appellant.

476

Muir Woolley for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and Lloyd Hinkelman, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Defendant was found guilty on both counts of an information charging him with violating section 11500 of the Health and Safety Code (possession of narcotics) and section 11530 of the same code (cultivation of narcotics). Judgment was pronounced, the terms to run concurrently.

Appellant has appealed from the judgment and in his opening brief contends: (1) That the evidence was insufficient to justify the finding that appellant was guilty of the crimes charged; (2) that the verdict was illegal in that appellant was convicted of two crimes, one necessarily included in the other. In his closing brief appellant makes the additional contentions that the court erred in not instructing the jury as to flight in accordance with section 1127c of the Penal Code and that the district attorney was guilty of prejudicial misconduct in his remarks to the jury.

Before discussing appellant's contentions we shall summarize the evidence as shown by the record.

On September 16, 1956, Vol Gene McElhaney, the Chief Vice Officer of the sheriff's office, Stanislaus County, drove out to 1736 Beverly Drive, in the city of Modesto, where he discovered 10 marijuana plants growing in a flower bed on said premises. The flower bed was located between the front lawn and the roadway that runs along the front of the premises. The flower bed was overgrown with weeds except for the area where the marijuana was found growing therein. The marijuana plants were growing in a weed-free area that appeared to be under cultivation. The plants were healthy and green and stood 12 to 16 inches in height. As a result of Officer McElhaney's discovery, the premises at 1736 Beverly Drive were placed under surveillance by the sheriff's office from Sunday, September 16, 1956, until 2:30 or 3 p. m. on the following day.

On September 17, 1956, the premises at 1736 Beverly Drive were occupied by Don McDaniel, the appellant, his wife and their two children. The McDaniels had been renting the premises since August 9, 1956. Under the conditions of tenancy the appellant was supposed to take care of the house and yard, which included taking care of the lawn and flower beds. The appellant admitted cutting and watering the premises on various occasions.

Prior to the McDaniel occupancy of said premises, R. E. Evanson and his family rented the premises from August 1, 1956, to August 8, 1956. Del Reeves, a musician, and his wife rented said premises from April 24, 1956, to July 24, 1956. While Mrs. Reeves resided at said residence she cut and watered flowers in the flower bed which produced the marijuana plants. At that time there was not a "cleared area" in said flower bed. She was not aware of any marijuana growing in the yard during her occupancy of said premises.

On Sunday evening, September 16, 1956, Officer McElhaney visited the McDaniel residence where he had a conversation with Mrs. McDaniel about appellant's whereabouts. Mrs. McDaniel informed Officer McElhaney that the appellant was not at home. Officer McElhaney informed Mrs. McDaniel that he had heard marijuana was growing on the premises and he wanted to see her husband. Approximately an hour after McElhaney's departure appellant arrived home and was informed by his wife of McElhaney's visit and the nature of same. Appellant at this time left his abode and drove across town to his father's home where he called the sheriff's office, attempting to locate McElhaney. Appellant left his father's phone number and requested that McElhaney contact him.

At approximately 2 a. m. on September 17, 1956, McElhaney called appellant at his father's home and said he wanted to see the appellant. Appellant asked "is it about narcotics?" and was informed by Officer McElhaney that it was. Appellant agreed to meet McElhaney in half an hour at appellant's home. Appellant failed to keep his appointment with McElhaney. McElhaney waited until approximately 3 a. m. and then returned to town. At noon on September 17, 1956, the appellant was arrested at his place of employment, Milk Producers Association. Appellant was taken to his father's residence and then transported with his wife to their abode at Beverly Drive. When confronted with the marijuana plants, appellant denied said plants were his and stated he had never seen marijuana before.

Appellant was asked by Officer McElhaney why he didn't show up on the previous evening as agreed upon, and appellant responded as follows: "If I did [show up] I knew you would arrest me, and I didn't want to go to jail last night. I figured I would rather go to jail today."

Mrs. McDaniel was questioned about the marijuana plants by the arresting officers, and appellant, who was standing nearby, stated, "Leave her out of this. She doesn't know anything about it." Appellant was removed to the county jail, where he was booked.

Officers McElhaney and Donald Bear removed 10 healthy marijuana plants from the flower bed on Beverly Drive. Said plants were turned over to Allen Gilmore, a criminologist with the California Bureau of Criminal Identification and Investigation. Gilmore's analysis of the plants showed that the plants were marijuana.

The plants appeared to be six or seven weeks old when Gilmore received them from Officer McElhaney on September 18, 1956. Gilmore testified that a great deal of care is required to grow marijuana and that the plants must be watered every day or they will wilt and die. To successfully transplant marijuana plants, considerable care must be taken and the transplanting must be done when the plants are young and must contain the tap roots. He also testified that when transplanting marijuana the old soil should accompany the root structure of the plants.

Officer Bear took several soil samples from the flower bed and marijuana bed located therein, and a sample from a mound of soil which was located to the right of the marijuana bed.

Prior to his occupancy of the premises at 1736 Beverly

Drive, appellant had rented and resided in premises located at Dakota and Beckwith Roads in the Modesto area. Appellant had rented said premises from Virgie P. Grass and her husband during the period April 6, 1956, to September 7, 1956. Appellant's rented domicile consisted of the whole quarter acre, which included a water tank and pump located behind the house.

On September 23, 1956, Officer Bear drove out to the Grass residence at Dakota and Beckwith Roads and received permission to take soil samples from two depressions in the ground located behind the pump on said premises. Officer Bear removed two soil samples, one each from the two depressions in the soil which were approximately the size of a garden shovel. The soil samples were taken from an area approximately three feet behind the pump and near a water faucet. The surrounding area had been disked, but not the area which contained the two depressions. The two depressions were in an area covered by tall weeds and grass.

On September 27, 1956, Officer McElhaney deposited all the soil samples with Harry Johnson, a criminologist in the California Bureau of Identification and Investigation at Sacramento. McElhaney requested Johnson to test the various soil samples and see if all of them belonged to the same location or if some of the soil came from another location. Johnson made a test of the soils to identify the properties of the soil by measuring the density distribution and the quantity of the various mineral components in the soil. Mr. Johnson testified that the density distribution test, which he employed, was the most effective and the most practical and exacting manner of determining soil aggregates for the purpose of identifying or distinguishing between them.

Johnson's analysis revealed that People's Exhibit 4-2-b, which consisted of soil taken from the bare mound of earth located to the right of the marijuana bed, and People's Exhibits 5-1-c and 5-2-c, which consisted of soil taken from the two depressions were identical and indistinguishable in their distribution and the quantity of minerals which goes to make up the substance of the soil. People's Exhibits 4-1-b, which was soil taken from the marijuana bed at 1736 Beverly Drive, 4-3-b, 4-4-b, 4-5-b, 4-6-b and 4-7-b, which consisted of soil samples taken from the flower bed at 1736 Beverly Drive, were clearly different in their distribution and the quantity of minerals, from People's Exhibits 4-2-b, 5-1-c and 5-2-c, which, as previously stated, were identical.

During the period appellant resided at premises located at Dakota and Beckwith Roads, he was observed by James Nelson, a boy 8 years old, Sonja Nelson, a girl 9 years old, and their mother, Leila Nelson, who occupied the premises next door, watering the area around the pump. Appellant retained a dog in an enclosed area near the pressure system, and was observed on different occasions first watering the dog and then sprinkling water on what looked like weeds. Appellant was observed on one occasion to pull a small round object out of the ground from the area near the pump and to take said object to his back porch.

During the trial appellant denied that he had any knowledge of narcotics or that he had ever used narcotics. The prosecution introduced into evidence testimony that appellant's wife had testified in a divorce proceeding in December, 1955, that she thought appellant used marijuana. A few months prior to appellant's arrest, Officer McElhaney had a conversation with appellant concerning narcotics. During the course of said conversation appellant admitted that he had used narcotics but had quit. Appellant also stated at that time that he had quit running around with known narcotic users. McElhaney informed appellant that he had seen appellant with users in the New Era Club "a couple of nights before." Appellant responded, "That is when I quit. I haven't seen them since then and I don't intend to see them any more." In the summer of 1955, while appellant was at his father's home, he received a visit from Donald Lee Vandiver and a third party. Vandiver was looking for Bill Staats in the hope of obtaining some marijuana from Staats. Appellant said that Staats was probably in church, but that appellant had some marijuana. Appellant then reached up into the porch rafters and extracted a marijuana cigarette and the three individuals smoked the narcotic. It was also brought out during the course of the trial that several of appellant's acquaintances were known narcotics users.

Appellant testified that he had no knowledge of the marijuana plants found at Beverly Drive; that he did not transplant said plants; and that he was not a narcotics user. Appellant introduced into evidence Defendant's Exhibit G, which consisted of a soil sample taken from the pump area at Dakota and Beckwith Roads, and Defendant's Exhibit F, which consisted of a soil sample taken from the marijuana bed at 1736 Beverly Drive, and Defendant's Exhibit H, which consisted of a soil sample taken from People's Exhibit 4-2-b.

Herman Remple, a chemist from Twining Laboratories, analyzed the aforementioned soil samples by the use of a spectrographic and chemical analysis tests. Remple testified that under the chemical analysis test there was considerable difference between Defendant's Exhibits G and H. Defendant's Exhibits F and G were found by Remple to be similar in many respects. Under the spectrographic analysis, the basic components of Defendant's Exhibits F, G and H were the same.

Appellant testified that he did not know Donald Lee Vandiver and did not smoke a marijuana cigarette with him. He also maintains that the sprinkling done by him on the premises at Dakota and Beckwith Roads was for the sole purpose of watering his dog and to keep down the dust in the area where the dog was located.

Appellant first contends that the evidence was not sufficient to sustain his conviction of illegal possession of marijuana. His argument is but an argument as to the weight of the evidence, and we think it is clear from the summary of the evidence hereinbefore set forth that the verdict of the jury finds substantial support in the record.

The crime of possession of narcotics requires a physical or constructive possession of the narcotic coupled with knowledge of the narcotic substance which the violator has under his dominion and control. (*People* v. *Denne,* 141 Cal. App.2d 499 [297 P.2d 451]; *People* v. *Batwin,* 120 Cal.App. 2d 825 [262 P.2d 88]; *People* v. *Van Valkenburg,* 111 Cal. App.2d 337 [244 P.2d 750].) To have possession within the meaning of section 11500 of the Health and Safety Code, the statute does not require "proof of possession" at the very time of arrest (*People* v. *Belli,* 127 Cal.App. 269, 271 [15 P.2d 809]), nor is it necessary to prove that "the person accused has the unlawful article on his person." (*People* v. *Sinclair,* 129 Cal.App. 320, 322 [19 P.2d 23].) See also *People* v. *Martinez,* 117 Cal.App.2d 701 [256 P.2d 1028].

We are satisfied that the jury could reasonably infer from the evidence that appellant had possession of the marijuana which was under cultivation in the flower bed on the premises under his dominion and control.

Appellant's next contention, that the evidence was not sufficient to sustain his conviction of cultivation of marijuana, is likewise but an argument as to the weight of conflicting evi-

dence. We think that it was not inherently improbable but wholly reasonable for the jury to infer from the evidence produced that the appellant planted and maintained marijuana behind the pump at Dakota and Beckwith and transplanted and maintained the marijuana when he moved to 1736 Beverly Drive. The evidence hereinbefore set forth strongly supports such an inference. It is within the province of the jury to weigh the evidence and to draw inferences therefrom, and the finding of the jury will not be reversed on appeal unless "upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Newland,* 15 Cal.2d 678-681 [104 P.2d 778].)

Appellant's next contention is that "The verdict was improper as the appellant was convicted of two crimes, one necessarily included in the other."

The information charged in Count One that appellant, on or about the 17th day of September, 1956, unlawfully had marijuana in his possession. In Count Two it was charged that on or about the 17th day of September, 1956, he planted, cultivated, harvested, dried and processed marijuana.

Aside from the fact that both counts charge the offenses to have been committed on the 17th day of September, 1956, that is, on the same day, there is nothing on the face of the information to inform us that we do not have here charges of two separate offenses committed as a result of disconnected acts and facts. Thus it does not appear from the information that he was not charged with having, let us say, cigarettes containing marijuana under Count One, while he is charged in Count Two as on the same date being in the process of growing the plant from which marijuana cigarettes are made.

It was held in the recent case of *People* v. *Marshall,* 48 Cal.2d 394 [309 P.2d 456], that it is the offense specifically charged rather than the name applied to it which identifies and delimits the judgment imposed on conviction of the charge and that the yardstick for measuring offenses "necessarily included" in a charge is, in the meaning of Penal Code, section 1159, and in fairness to both parties, the specific language of the accusatory pleading rather than the language of the statute defining the offense charged. Quoting from headnote 9 of the cited case, we find the following: "Fairness to both parties requires that the specific accusatory pleading be used as a yardstick for measuring offenses 'necessarily included' in an information charging defendant with taking 'an automobile' by robbery, since he is thereby put on notice that

he should be prepared to defend against a showing that he took that particular kind of personal property and against evidence showing the elements of robbery; a prosecutor may anticipate what evidence might develop on the trial and frame his pleading in specific terms to obviate such possibilities as a variance between pleading and proof and the running of the statute of limitations against the lesser offense of violating Veh. Code, § 503.'' The court said at pages 400, 401:

''In the case of *In re Hess* (1955), *supra,* 45 Cal.2d 171, 175 [288 P.2d 5], it is held that the offense of contributing to the delinquency of a minor is not included within a specific charge of forcible rape, because the charge of forcible rape does not inform the accused that he should be prepared to meet evidence that he did an act which would tend 'to cause or encourage any person under the age of 21 years' to become delinquent (Welf. & Inst. Code, § 702). In Hess, therefore, as in Greer, this court considered, as the yardstick for measuring the offenses included within the rape charged, the specific allegations of the accusatory pleading rather than the general code definition of rape as a crime which can be committed in various ways. . . .

''It is not unusual for a prosecutor to charge in one count the elements of two kinds of aggravated assault defined by two separate sections of the Penal Code, assault with intent to commit murder (Pen. Code, § 217) and assault with a deadly weapon (Pen. Code, § 245) . . . .

''Another type of decision [citations] tends to support the theoretical basis of the People's position that the specific allegations of the accusatory pleading, rather than the statutory definitions of offenses charged, constitute the measuring unit for determining what offenses are included in a charge. In the cases last cited, conviction of an offense pleaded by specific allegations is upheld, even though the pleading designates the offense by an incorrect name or citation of statute, on the theory that the specific allegations give the accused sufficient notice. The cases decided before and those decided since the 1927 'liberalization' of the rules of pleading in favor of the state (*ante,* footnote 5), make no differentiation as to theory. It may also be noted that it is the offense specifically charged rather than the name applied to it which identifies and delimits the judgment imposed on conviction of the charge.''

 Applying the rule laid down in *People* v. *Marshall,* *supra,* to the contents of the information in the instant case

and the specific allegations contained therein, we think it is clear that we do not have here a charge that includes another, or to state it in another way, that Count Two does not necessarily include Count One, or vice versa.

We are therefore unable to agree with appellant's contention that the offense charged in Count One (possession) is necessarily included in Count Two (cultivation). However, we find much merit in the contention raised by appellant in his closing brief, that in violation of section 654 of the Penal Code appellant is being punished in different ways for a single act or omission. That section provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of said provisions but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

In the case of *People* v. *Kehoe*, 33 Cal.2d 711 [204 P.2d 321], it was held that under an information for grand theft of an automobile (Pen. Code, § 487) and driving the automobile without the owner's consent (Veh. Code, § 503) charging each offense to have been committed on or about the same day in the same county, a judgment of guilty of both crimes cannot stand in view of Penal Code, section 654. The court said at pages 713, 715:

"The doctrine of included offenses is a part of the constitutional guarantee against double jeopardy. (Cal. Const., art. I, § 13.) Section 1023 of the Penal Code implements that guarantee by providing that a prior conviction is a bar to subsequent prosecution for the same offense 'or for an offense necessarily included therein.' In determining whether this section is applicable to a specific situation, it is necessary first to determine whether a given crime, by definition, necessarily and at all times is included within another one. (See discussion in *People* v. *Greer*, 30 Cal.2d 589, 595 [184 P.2d 512].) But although a given crime is not 'necessarily included' within another one for the purpose of the double jeopardy statute, under certain circumstances the conviction of both crimes cannot be justified. The Penal Code recognizes this principle in section 654, which declares: 'An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one. . . .' This section is not concerned with the

question of whether the particular crime, in the abstract, necessarily and always is included within another one, but rather, it is directed to the question of whether two statutes punish one specific act of the defendant. Accordingly, the question here presented for decision is whether, under the facts shown in the record now being reviewed, Kehoe may be punished both for the violation of section 503 of the Vehicle Code and for the crime of grand theft, of which he was also convicted.

. . . . . . . . . . . . .

"Accordingly, although it was proper to charge Kehoe with both crimes in the information and the record would support his conviction of either of them, it was error for the court to enter a judgment finding him guilty of both offenses Since he was found guilty of grand theft, the lesser crime of violation of section 503 may be said to have merged into that conviction. Although the sentences were ordered to run concurrently, to 'preclude the dual judgments of the trial court from hereafter working any possible disadvantage or detriment to the defendant in the later fixing of his definite term of the [Adult Authority],' (*People* v. *Craig,* 17 Cal.2d 453, 458 [110 P.2d 403], the judgment, insofar as it finds Kehoe guilty of a violation of section 503 of the Vehicle Code, is reversed with directions to the trial court to dismiss count two of the information. In all other respects, the judgment is affirmed as is also the order denying a new trial."

And in *People* v. *Smith,* 36 Cal.2d 444, the court said at page 448 [224 P.2d 719]:

"Section 654 prohibits double punishment for the commission of a single act (*People* v. *Kehoe,* 33 Cal.2d 711, 713 [204 P.2d 321] ; *People* v. *Knowles,* 35 Cal.2d 175, 187 [217 P.2d 1]), but it does not prohibit convictions for different offenses arising out of a single act unless one is necessarily included within the other. (Pen. Code, §§ 954, 1023; *People* v. *Craig,* 17 Cal.2d 453, 457 [110 P.2d 403] ; *People* v. *Kynette,* 15 Cal.2d 731, 761-762 [104 P.2d 794].) To preclude any possibility of the dual judgments working any disadvantage to the detriment of the defendant in the later fixing of his term, the judgment of conviction of the lesser crime has been reversed in several cases. (*People* v. *Knowles,* 35 Cal.2d 175 [217 P.2d 1] ; *People* v. *Kehoe,* 33 Cal.2d 711 [204 P.2d 321] ; *People* v. *Clemett,* 208 Cal. 142 [280 P. 681].)"

In the instant case the evidence shows without conflict that appellant's only possession of marijuana was such as he had while engaged in the cultivation of the plant. His posses-

sion was based upon his planting and cultivation of it and we are convinced that upon the record here the offense of possession was a mere incident to the offense of cultivation and that under the authorities hereinbefore cited a conviction on both counts cannot stand. Appellant was found guilty of cultivation of marijuana (Count Two), and was also found guilty of possession of marijuana (Count One), and we have determined that under the evidence in the instant case the offense of possession was based upon his planting and cultivation of marijuana, and may thus be said to be merged in the offense of cultivation. Therefore, we must, as was done in *People* v. *Kehoe, supra,* reverse the judgment as to the charge of possession and direct the trial court to dismiss Count One of the information.

■ In his closing brief, appellant for the first time makes the contention that the court erred in not instructing the jury as to flight in accordance with section 1127c of the Penal Code which provides that where evidence of flight of defendant is relied upon as tending to show guilt the court shall instruct the jury as provided in said section. There is nothing in the record to indicate that the prosecution relied upon any evidence of flight, which no doubt accounts for appellant's failure to offer any instruction upon it, and in view of the slight evidence of any flight on the part of appellant, it is quite likely that such an instruction would have been harmful to appellant. Under the circumstances shown by the record in the instant case we are satisfied that no prejudicial error was committed by the court's failure to give an instruction on flight.

Appellant's final contention, also made for the first time in his closing brief, is that the district attorney was guilty of prejudicial misconduct in his remarks to the jury. A number of remarks are mentioned by appellant, but it does not appear, nor is it contended, that any objection was made to such remarks, or that the court was requested to instruct the jury to disregard them. ■ As a general rule a failure to object to the statements in the trial court amounts to a waiver unless the misconduct was of such character that its harmful effect could not be removed by striking the objectionable remarks or admonishing the jury to disregard them. (*People* v. *Ross,* 120 Cal.App.2d 882 [262 P.2d 343].) Furthermore, the questioned remarks were well within the bounds of legitimate argument and appear to have been based upon the evidence.

In view of the foregoing the judgment of conviction under Count One (possession of narcotics) is reversed with directions to the trial court to dismiss Count One, and in all other respects the judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.