[Crim. No. 3418. First Dist., Div. One. June 11, 1958.]

THE PEOPLE, Respondent, v. SAMUEL BILLINGSLEY et al., Appellants.

Samuel Billingsley and Morris Volo, in pro. per., and Lawrence Speiser, under appointment by the District Court of Appeal, for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Peter T. Kennedy, Deputy Attorney General, for Respondent.

BRAY, J.—Defendants were charged with violation of section 211, Penal Code (robbery armed with a gun). Defendant Billingsley was also charged with a prior conviction of two counts of larceny. The jury found both guilty of robbery in the first degree and of being armed with a deadly weapon. It also found the prior conviction of defendant Billingsley to be true. Both defendants appeal from the judgment and the order denying new trial.

### Questions Presented

1. Sufficiency of evidence of possession of a gun.
2. Did the court order a conviction?

### Evidence

About noon February 15, 1957, Robert C. Chenault, a postal employee, having just cashed his pay check ($130.15) at a bank, was walking east on Page Street, San Francisco. He was carrying his 2-year old daughter in his arms. At a point near to 530 Page Street defendant Volo stopped him. Volo showed him a card with the name Bessie Smith, Eagle Rock Hotel, Pea Green Street, on it and asked its location. Thereupon defendant Billingsley "came up and placed what looked to be a gun in my, in my side, in my ribs; told me to hold still or don't move, and he quickly took his other hand and took my money out of my pocket, and he and the other fellow left up the street running." Chenault took time off from his job to look for the robbers. On February 21st he saw them on the street but by the time he could call the police department and the police arrived they had disappeared. On February 24th he again saw them and had them arrested by the police.

About 12:30 on February 15th Roy L. Doss drove up to his home at 530 Page Street and stopped his car on the sidewalk driveway. He then noticed Chenault, whom he did not know, walking up the street with a little girl in his arms. He also noticed both defendants, whom he likewise did not know, standing by a fence next to his apartment. As Chenault approached the two men stopped him. Doss then got out of his car, went in to the house, took his coat off, put some coveralls on, picked up a screwdriver and returned to the street. There he saw Chenault coming back down the

street, crying and screaming. The defendants were gone. Chenault said he had been robbed and asked Doss to call the police. Doss was not in the house over two minutes.

Both defendants testified that they had seen Chenault coming from the bank and had assumed that he had some money on him. They accosted Chenault and Volo, assuming a Jamaican dialect, showed Chenault the Bessie Smith address, asking where it was, gave him what was obviously a fantastic story and got him into a crap game and won his money from him. Both denied having a gun or taking the money from him other than in the crap game. Defendant Volo admitted that he was a professional "con man" and that Chenault was the "sucker." The meeting with Chenault took five or ten minutes. Defendants left when Chenault got mad over losing his money in the game. Defendant Billingsley's testimony was to the effect that although the defendants were working together to mulct Chenault, Chenault told him that Volo had $1,800 tied around his waist and that Chenault and Billingsley should somehow get that money away from him. Billingsley then produced dice, and he and Chenault agreed that neither would lose to the other, and would split evenly their winnings from Volo. Volo had what Billingsley called a "Philadelphia bankroll," a $20 bill wrapped around some newspaper with a $500 money band around it. Volo himself called this arrangement a "Mexican bankroll." Volo told Inspector Zimmerlin that he and Billingsley had been waiting outside the bank to make a "score," that is, make money through some scheme or device. Sometimes they stop quite a few persons before they succeed in making a score.

### 1. *Sufficiency of the Evidence.*

The main attack under this heading is that the presence of a gun was not proved. The jury found expressly that a gun was used. ■ Moreover, to constitute first degree robbery under the circumstances of this case there must be proof to satisfy a jury beyond a reasonable doubt that a gun was used. ■ Our duty is to determine whether upon the face of the evidence there were sufficient facts to support the finding of the jury, and we must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence. (*People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911].)

■ Chenault testified that defendant Billingsley "placed what looked to be a gun in" his side. When asked to

"describe the object that you saw against your ribs" he stated, "Well, it was blue steel, and I saw about two inches of the barrel, and I also observed what looked to be a hole." Later when asked "Now you say you're sure you saw a gun" he answered "It looked to be a gun." He did not see the handle. When asked if he looked at the gun he said that he "looked at it." He was scared. This evidence was sufficient to support the finding of the jury that there was a gun used in the robbery. ■ Proof of the presence of a gun "includes evidence of facts, circumstances and conduct from which the jury may infer that the robber was thus armed." (*People* v. *Raucho*, 8 Cal.App.2d 655, 666 [47 P.2d 1108].) ■ The fact that Chenault saw only two inches of the barrel does not disprove that it was a gun. A short barrelled blue steel revolver could be easily cradled in one's hand in such a fashion as to expose no more of the barrel than that. Chenault's credibility was a matter for the jury to determine. (*People* v. *Ross,* 120 Cal.App.2d 882, 886 [262 P.2d 343].)

2. *Verdicts.*

A most unusual situation developed concerning the jury's verdicts. It had been given three verdicts as to each defendant, (1) not guilty, (2) guilty of robbery with blank left to determine the degree and whether or not the charge of being armed was true, and (3) guilty of grand theft. Returning to the courtroom after deliberating approximately 1½ hours, the foreman gave the clerk four verdicts. Apparently he handed them to the judge. Before they were read the judge stated that there were two verdicts as to each defendant, finding each guilty of first degree robbery and of grand theft. He then asked the jury if it intended that. The foreman stated that the jury thought from the instructions that they could find the defendants guilty of both crimes as grand theft was included in robbery. The judge then told them they could not find the defendants guilty of both, that it must be one crime or the other. Defense counsel then insisted that only the lesser verdict could be considered as the verdict of the jury. More discussion followed in which the foreman said that the two verdicts were due to the jury's misunderstanding. Stating that he had not accepted the verdicts, the judge instructed the jury to return to the jury room and to bring in but one verdict as to each defendant, stating "I'm not telling you to bring in first degree or grand theft . . . I am only telling you to bring in one."

The jury retired and later brought in a verdict of guilty of first degree robbery against each defendant.

■ Defendants concede that the contention made in the trial court to the effect that the court must accept the lesser verdict and reject the greater was erroneous, as the rule requiring such action only applies where there is no verdict brought in on the greater offense. (See *People* v. *Esposti*, 82 Cal.App.2d 76 [185 P.2d 866]; *People* v. *Greer*, 30 Cal.2d 589 [184 P.2d 512].) Under these cases, had the judge accepted the verdicts and had them recorded, the conviction of the greater offense would have stood and that of the lesser offense would have had to be set aside. The judge was correct in sending the jury back to determine which of the two verdicts it desired to bring in. Actually, this action was in defendants' favor as it gave the jury a chance to consider returning the lesser verdict.

■ Defendants contend that, in effect, the court was instructing the jury to bring in a verdict of guilty and not to bring in a verdict of not guilty. A reading of the entire colloquy between the judge, counsel, and the foreman of the jury shows that the judge was only informing the jury that it could not find the defendants guilty of both crimes but only of one. It would have been idle and unnecessary for the judge to inform the jury that it could also bring in a verdict of not guilty. Apparently the jury still had the not guilty form of verdict. Moreover, it had agreed that the defendants were guilty of both the greater and lesser crimes and it is inconceivable that because it was instructed that it could not find the defendants guilty of both crimes it would have found them guilty of neither. *People* v. *Walker*, 93 Cal.App.2d 818 [209 P.2d 834], where it was held that the judge practically forced a jury to agree, is not in point. There the jury had not agreed. Here it had, and the judge was sending them back to determine which of two guilty verdicts the jury desired to stand on, thereby, in effect, giving the defendants a second chance at a lesser verdict. Had the judge accepted the verdicts as originally brought in, the verdict of first degree robbery would have stood and the grand theft verdict would have had to be set aside. *People* v. *Brancato*, 83 Cal.App.2d 734 [189 P.2d 504], supports the action of the judge here rather than as defendants claim shows error. There the jury returned with a guilty verdict against each of the defendants. On being polled, one of the jurors gave an equivocal answer as to whether they were her verdicts. Thereupon the court

sent the jury out for further deliberation. Returning with guilty verdicts, it developed that after the jury on its return to the jury room had unanimously voted the defendants guilty, the foreman did not sign new verdicts but used the ones previously signed and which had been brought into the courtroom the first time and returned to him. The defendants objected that the verdicts had not been signed after the last vote was taken. Thereupon, upon stipulation of the parties that the foreman's signatures could be cut off the verdicts instead of preparing new ones, the verdicts without the signatures were given to the jury, which retired to the jury room where the verdicts were signed by the foreman and the jury returned to court. On appeal the reviewing court held that this was proper procedure. Defendants rely upon the following language in the case (p. 744) : "There is no merit to the contention that the court failed to submit forms of verdict other than those of guilty. The jury had also been given 'not guilty' forms and the subsequent proceedings involved only the furnishing of new forms for guilty verdicts, which was done in a way consented to by the defendants. There is no question that the matter was fully understood by everyone and the 'not guilty' forms originally furnished were never withdrawn from the consideration of the jury." However, that language supports the action in our case. Here the jury had also been given "not guilty" forms and the subsequent proceedings involved only the determination by the jury of which of two verdicts it had agreed upon was to stand when informed that they both could not stand. Here "There is no question that the matter was fully understood by everyone and the 'not guilty' forms originally furnished were never withdrawn from the consideration of the jury." Particularly is this so in view of a portion of the judge's remarks during the discussion concerning the verdicts: "You misunderstood me. In other words, either the men are guilty,—*if they are guilty to begin with*, either they are guilty of robbery or they are guilty of grand theft; but they can't be guilty of both." (Emphasis added.)

There was no error in connection with the verdicts, or otherwise. The judgment and order denying new trial are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.