# IN THE SUPREME COURT OF IOWA

No. 19–0971

Submitted October 21, 2021—Filed December 3, 2021

**STATE OF IOWA,**

Appellee,

vs.

**MICHAEL JAMES JONES,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Clay County, Nancy L. Whittenburg, Judge.

The defendant challenges the sufficiency of the evidence for his convictions of possession of methamphetamine with intent to deliver and possession of marijuana. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Pamela Wingert (argued) of Wingert Law Office, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller (argued), Assistant Attorney General, for appellee.

**McDONALD, Justice.**

Michael Jones was charged with possession of methamphetamine with intent to deliver, in violation of Iowa Code § 124.401(1)(*b*)(7) (2016), and possession of marijuana, in violation of Iowa Code § 124.401(5). At trial, Jones contended he was merely in the wrong place at the wrong time and that there was insufficient evidence to establish he had possession of the controlled substances. The jury disagreed and found Jones guilty as charged. Jones reiterated his argument on appeal, and the court of appeals agreed with Jones and reversed his convictions. We granted the State's application for further review.

This court reviews sufficiency of evidence claims for the correction of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). In conducting that review, we are highly deferential to the jury's verdict. The jury's verdict binds this court if the verdict is supported by substantial evidence. *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *Id.* In determining whether the jury's verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (quoting *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005)). "Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different

finding." *Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010) (quoting *Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004)).

The evidence is largely undisputed. At approximately 10:15 p.m. on the night of December 27, 2016, Clay County Deputy Sheriff Josh Long was driving northbound on a highway outside of Spencer. He observed a Dodge Durango sport utility vehicle approximately one mile in front of him pull over, activate its emergency flashers, and park in the gravel on the shoulder of the road. As Deputy Long approached the parked vehicle, he noticed a second vehicle in the ditch on the side of the road. He also noticed someone, later identified as Jones, in the ditch shining a flashlight.

Deputy Long activated his emergency lights and pulled in behind the parked Dodge, which was later identified as Jones's vehicle. As Deputy Long was coming to a stop, Jones exited the ditch, walked past the front of the parked Dodge (moving from the passenger side to the driver side), turned to his left on reaching the driver's side front corner, and then walked along the driver's side of his vehicle back toward Deputy Long's vehicle. Although Deputy Long did not notice it at the time, video from Deputy Long's dashcam showed that as Jones was passing the driver's side front fender of his vehicle, he turned and looked back at the ground in front of his vehicle and then kept walking toward Deputy Long's vehicle.

Deputy Long asked Jones what happened. According to Jones, his friend Heidi Smith had contacted him to help pull Smith's friend's vehicle out of the ditch. Jones stated the vehicle in the ditch had struck a deer and went off the

road. The driver of the vehicle and her child had left with someone so the child could get out of the cold. Deputy Long asked where the deer was, and Jones pointed north. They walked north in front of Jones's vehicle and observed a large buck on the side of the road. As they were walking back towards their vehicles, Deputy Long asked Jones for his driver's license. Jones went into his vehicle to get his license. As Jones was retrieving the license, Deputy Long observed a small black drawstring bag under the front bumper of the vehicle approximately twelve to eighteen inches in front of the passenger side tire. Deputy Long shined his flashlight on the bag and observed a glass bulb, which he believed to be a methamphetamine pipe. He did not say anything about the bag at the time.

Deputy Long took Jones's driver's license and asked Jones to wait in the Dodge while Long verified the license information. Deputy Long returned to his vehicle, verified the license information, and called for backup. In response to Deputy Long's call, Deputy Spencer Taylor arrived at the scene. As Long was apprising Taylor of the situation, Jones exited his vehicle and approached the two deputies. The deputies asked Jones to step to the front of Jones's vehicle. Deputy Long asked Jones about the bag on the ground, and Jones denied any knowledge of it. Jones said it looked like a sunglasses case. Deputy Long asked what was in the bag, and Jones responded, "I don't know. Probably nothing good." Deputy Taylor picked up the bag and could see drug paraphernalia. The deputies then detained Jones and placed him in Long's vehicle.

The deputies searched through the bag and found seven individually wrapped baggies of methamphetamine inside a larger baggie. Subsequent testing

showed the total weight of methamphetamine was approximately 8.5 grams. The deputies also found a methamphetamine pipe, .27 grams of marijuana, a marijuana pipe, a false battery, a scrap of paper with writing on it, and a fuel saver card. The bottom of the false battery screwed off, and the deputies found additional methamphetamine inside the battery. Subsequent investigation revealed the fuel saver card belonged to someone named Danny Titus. Deputy Taylor later did independent internet research and found Jones was Facebook friends with Titus. Titus was known to law enforcement as a methamphetamine user.

Before leaving the scene, the deputies continued to search the area. They found a key ring approximately ten to fifteen feet in front of Jones's vehicle. Attached to the key ring were two keys and another fuel saver card. Subsequent investigation showed the fuel saver card belonged to someone from Minnesota named Angela Riviera. Law enforcement did not find any connection between Riviera and the persons involved in this case.

The deputies placed Jones under arrest and transported him to the jail where they questioned him. Jones denied knowledge of the baggie or its contents. He suggested the baggie belonged to whoever had been there before him. The deputies seized two $100 dollar bills from Jones. They field tested the bills, and both tested positive for the presence of methamphetamine. The deputies also seized Jones's driver's license. They field tested the license, and it tested positive for the presence of methamphetamine.

While the evidence was largely undisputed, the inferences to be drawn from the evidence were greatly disputed. At trial, the State contended that Jones had the bag containing the methamphetamine in his possession as he was walking out of the ditch, observed Deputy Long's vehicle approaching the scene, and dropped the bag on the ground near the tire to get it off his person and out sight. Jones contended that he was merely in the wrong place at the wrong time. He contended the bag could have been abandoned on the roadside by somebody else. The jury considered the evidence and arguments and found the defendant guilty of all charges.

The court of appeals made three legal errors in reviewing the jury's verdict. First, the court of appeals misstated the law of possession. Possession may be actual or constructive. *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014). Relying on *State v. Atkinson*, 620 N.W.2d 1, 2 (Iowa 2000) (en banc), the court of appeals stated "actual possession occurs when the controlled substance is found on the defendant's person." The court of appeals concluded that because "the deputy did not find the controlled substances on [Jones's] person," this case necessarily was a constructive possession case. The court of appeals then went on to hold there was insufficient evidence to prove Jones was in constructive possession of controlled substances.

The court of appeals statement regarding actual possession was an incomplete statement of the law. In decisions subsequent to *Atkinson,* our appellate courts have clarified a defendant can be in actual possession of a controlled substance when the controlled substance is found on the defendant's

person or "when substantial evidence supports a finding it was on [the defendant's] person 'at one time.' " *Thomas*, 847 N.W.2d at 442 (quoting *State v. Vance*, 790 N.W.2d 775, 784 (Iowa 2010)); *see Vance*, 790 N.W.2d at 784 ("Although the pseudoephedrine was not found on Vance's person at the time of the stop, substantial evidence supports the jury's finding that *at one time* Vance had actual possession of the pseudoephedrine with the intent to manufacture methamphetamine." (emphasis added)); *State v. Eubanks*, No. 13–0602, 2014 WL 2346793, at *3 (Iowa Ct. App. May 29, 2014) (noting "[t]he statute criminalizes 'possession' " and "the State can prove past possession, whether actual or constructive"). In other words, a jury can find a defendant was in actual possession of a controlled substance even when the defendant was not "caught red-handed and in physical possession at the time of the stop or arrest." *Eubanks*, 2014 WL 2346793, at *3. Other courts have reached the same conclusion. *See, e.g., United States v. Cantrell*, 530 F.3d 684, 693 (8th Cir. 2008) ("A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it."); *People v. McDaniel*, 316 P.2d 660, 664 (Cal. Dist. Ct. App. 1957) (stating possession does not require proof of possession "at the very time of arrest" (citing *People v. Belli*, 15 P.2d 809, 810 (Cal. Dist. Ct. App. 1932))); *Womack v. State*, 738 N.E.2d 320, 324 (Ind. Ct. App. 2000) ("The state was not required to show that Womack possessed the bag of marijuana at the time of Womack's apprehension, or at the time the officers discovered the bag.").

Second, in concluding there was insufficient evidence to establish Jones was in constructive possession of controlled substances, the court of appeals relied upon a long-rejected distinction between direct-evidence and circumstantial-evidence cases. The court of appeals applied *State v. Schurman,* 205 N.W.2d 732 (Iowa 1973). In that case we said that in a circumstantial-evidence case, a conviction can stand only where the evidence is "entirely consistent with defendant's guilt, [and] wholly inconsistent with any rational hypothesis of his innocence." *Id.* at 734. The court of appeals concluded the evidence in this case was not "wholly inconsistent with any rational hypothesis of [Jones's] innocence" and thus the conviction was not supported by substantial evidence.

But the legal distinction between direct-evidence and circumstantial-evidence cases was overruled long ago. *See State v. Ernst,* 954 N.W.2d 50, 57 (Iowa 2021) (explaining the distinction was rejected in, and *Schurman* was overruled by, *State v. O'Connell,* 275 N.W.2d 197 (Iowa 1979) (en banc)). The court of appeals erred in relying on *Schurman* and in requiring the State to disprove all rational hypotheses of Jones's innocence. Whether the State's evidence is direct, circumstantial, or some combination of the two, the State is not required to negate any and all rational hypotheses of the defendant's innocence. *See id.* What the State is required to do is convince the jury beyond a reasonable doubt of the defendant's guilt. Direct and circumstantial evidence are equally probative in that regard. *Id.*; Iowa R. App. P. 6.904(3)(*p*).

Third, the court of appeals reasoned that the convictions in this case were the result of an impermissible stacking of inferences. As we recently explained in *State v. Ernst*, however, "a strict prohibition against stacking inferences to be drawn from circumstantial evidence is inconsistent" with substantial-evidence review. 954 N.W.2d at 59. "The relevant inquiry is not whether a fact finding is based on an inference drawn from another inference. Rather, the relevant inquiry is whether a fact finding is a legitimate inference 'that may fairly and reasonably be deduced from the record evidence.' " *Id.* (quoting *Tipton*, 897 N.W.2d at 692). The "stacking" of inferences is problematic only when the jury's finding crosses from logical inference to impermissible speculation.

With that understanding, when the evidence is viewed in the light most favorable to the verdict, we conclude the jury's verdict is supported by logical inferences drawn from the record and not from impermissible speculation.

The evidence shows the bag containing the pipe and controlled substances likely was placed or dropped on the ground by someone who had recently been at the scene of the accident where the deputies found Jones. The methamphetamine pipe found in the bag was made of glass. The pipe was completely intact, unbroken, and unchipped. Deputy Long testified this showed the bag was not tossed out of a moving vehicle by a passing motorist because the pipe would not have survived the impact of hitting the ground at highway speed. Further, the bag had been on the shoulder of the road only a brief time before the Deputy Long discovered it. Deputy Long testified the winter had been unusually warm and it had been raining. The roadside gravel was damp, but the

black suede bag was relatively dry and clean. The paper inside the bag was dry. There was no water damage to anything in the bag. Based on these facts, Deputy Long testified it was his opinion the bag was recently placed on the ground. *See, e.g.*, *Light v. State*, Nos. 04–18–00802–CR, 04–18–00803–CR, 2019 WL 5773670, at *3 (Tex. App. Nov. 6, 2019) ("Despite the weather conditions, the box was dry, indicating it was recently discarded."), *discretionary review refused* (Sept. 16, 2020), *cert. denied*, 141 S. Ct. 1745 (2021).

Among the small, limited universe of suspects, the evidence supports the jury's verdict that Jones possessed the controlled substances. Jones was the only person present at the scene when Deputy Long arrived. Deputy Long observed the bag only inches in front of the passenger tire of Jones's vehicle. Video from Deputy Long's dashcam video showed Jones passed by the exact spot where the drugs were found. From this the jury could have inferred Jones dropped the drugs on the ground. *See, e.g.*, *Sheppard v. State*, 03–10–00868–CR, 2012 WL 6698963, at *4 (Tex. App. Dec. 21, 2012) (affirming conviction for possession of a controlled substance where cocaine was found on the ground in front of defendant's truck and the defendant's path "took him around his truck, up the passenger side, across the front of his truck—the exact location where the cocaine was later discovered").

Other evidence showing Jones had actual knowledge the bag was on the ground even before the deputies brought the bag to Jones's attention supports the inference that Jones actually possessed the controlled substances and dropped them on the ground. Deputy Long's dashcam video showed that after

Jones had walked past the front of the Dodge, he turned and looked back at the area in front of the truck. From this, the jury was free to infer Jones was aware the drugs were on the ground and he turned to make sure the drugs were not readily visible. *See, e.g., State v. Brown*, No. 14–0588, 2015 WL 2089400, at *3 (Iowa Ct. App. May 6, 2015) (holding there was sufficient evidence of actual possession where video revealed movement showing drugs could have been dropped on the ground beside stopped vehicle when combined with evidence the drugs were recently placed there); *State v. Keys*, No. 11–2089, 2013 WL 1457044, at *2 (Iowa Ct. App. Apr. 10, 2013) (holding evidence was sufficient to show defendant was in possession of cocaine where officer observed defendant pause during flight and subsequently found a baggie of cocaine on the ground where defendant paused). In addition to the video evidence showing Jones looked back to make sure the bag was not readily visible, the video also showed Jones was trying to engage the deputies and shepherd them away from the front of the Dodge. From this, the jury was free to infer Jones was engaged in conduct to minimize the risk the deputies would find the recently dropped bag of drugs.

Finally, the evidence showed Jones had actual knowledge of the contents of the bag and had handled the contents of the bag. When the deputies asked Jones if he knew what was in the bag, he stated "nothing good." In addition to this incriminating response, the deputies obtained physical evidence linking Jones to the bag of drugs. The deputies seized two $100 dollar bills in Jones's possession, and each of the bills field-tested positive for the presence of

methamphetamine. The deputies also seized Jones's driver's license, and it field-tested positive for methamphetamine.

While the defendant has an alternative explanation for the evidence, "[t]he jury [was] not required to accept the defendant's version of the events." *State v. Helm*, 504 N.W.2d 142, 146 (Iowa Ct. App. 1993); *see Patton v. Commonwealth*, Record No. 1494-19-2, 2020 WL 3690307, at *4 (Va. Ct. App. July 7, 2020) ("Appellant contends that the evidence did not exclude the 'very real possibility' that the drugs were there prior to appellant being near the trashcan. However, '[t]he Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs' on the ground." (alteration in original) (quoting *Langston v. Commonwealth*, 504 S.E.2d 380, 384 (Va. Ct. App. 1998))). "[T]he jury was free to reject certain evidence, and credit other evidence." *State v. Hickman*, 623 N.W.2d 847, 849 (Iowa 2001) (en banc). And it was for the jury "to weigh the evidence" and "to determine the plausibility of explanations" of the case. *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *Williams*, 695 N.W.2d at 28). "[I]t is not for us to interfere with the finding made when supported by substantial evidence, even though the evidence may have also supported a finding favorable to the defendant." *State v. Keeton*, 710 N.W.2d 531, 535 (Iowa 2006).

In sum, the totality of the evidence in this case raises a "fair inference of guilt" and generates "more than suspicion, speculation, or conjecture." *State v. DeWitt*, 811 N.W.2d 460, 475 (Iowa 2012). The jury's verdict is thus supported

by substantial evidence and is binding on this court, and we affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**